**BURSOR & FISHER, P.A.**
Ines Diaz Villafana (State Bar No. 354099)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: idiaz@bursor.com

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA—EASTERN DIVISION**

GIL HODGES, individually and on behalf of all other persons similarly situated,

Plaintiff,

v.

OPTUM INC.,

Defendant.

Case No. 5:25-cv-03325-FLA-AJR

The Honorable Fernando L. Aenlle-Rocha

**PLAINTIFF'S OPPOSITION TO DEFENDANT OPTUM, INC.'S MOTION TO COMPEL ARBITRATION AND STAY ACTION**

Hearing Date: May 8, 2026
Time: 1:30 p.m.
Courtroom 6B

# TABLE OF CONTENTS

PAGE(S)

INTRODUCTION .......... 1

ARGUMENT .......... 3

I. UNITEDHEALTH GROUP'S 2025 TERMS OF USE DO NOT APPLY TO PLAINTIFF'S OPTUM WEBSITE VISITS BEFORE APRIL 23, 2025 .......... 3

A. Defendant Provides No Evidence of any Contract Prior to April 23, 2025. .......... 3

B. The Parties Did Not Mutually Assent to Arbitration, and the Optum.com Website Terms Do Not Contain an Arbitration Provision. .......... 5

C. Defendant Is a Non-Signatory to the Agreement, and the Arbitration Provision's Terms Are Expressly Limited to UHG and Plaintiff, Not Defendant. .......... 8

D. The Arbitration Agreement is Not Retroactive. .......... 10

II. THE DELEGATION CLAUSE IS NOT ENFORCEABLE .......... 13

A. Application of Minnesota Law Would Be Contrary to California Public Policy. .......... 14

B. The Delegation Clause is Procedurally Unconscionable. .......... 15

C. The Delegation Clause is Substantively Unconscionable .......... 16

1. The Terms Contain One-Sided, Mandatory Pre-Arbitral Dispute Resolution. .......... 16

2. The Terms Limit Relevant Statutes of Limitations to One Year. .......... 17

CONCLUSION .......... 18

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Aboyan v. Citigroup, Inc.*,
2025 WL 1720189 (C.D. Cal. May 22, 2025) .......... 3

*Apexxus LLC v. OptumRx, Inc.*,
2025 WL 3707249 (N.D. Cal. Dec. 22, 2025) .......... 19

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... 3, 6, 10

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) .......... 21, 22

*Caremark, LLC v. Chickasaw Nation*,
43 F.4th 1021 (9th Cir. 2022) .......... 19

*Castro v. ABM Indus., Inc.*,
2018 WL 2197527 (N.D. Cal. May 14, 2018) .......... 15, 17

*Com. Factors Corp. v. Kurtzman Bros.*,
131 Cal. App. 2d 133 (1955) .......... 8

*Daugherty v. Experian Info. Sols., Inc.*,
847 F. Supp. 2d 1189 (N.D. Cal. 2012) .......... 19

*Faucett v. Move, Inc.*,
2025 WL 1112935 (9th Cir. Apr. 15, 2025) .......... 12, 13

*Fields v. Legacy Health Sys.*,
413 F.3d 943 (9th Cir. 2005) .......... 19

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) .......... 20

*Gabelli v. S.E.C.*,
568 U.S. 442 (2013) .......... 23

*Heckman v. Live Nation Entertainment, Inc.*,
120 F.4th 670 (9th Cir. 2024) .......... 16, 19, 20

*Kissel v. Code 42 Software, Inc.*,
2016 WL 7647691 (C.D. Cal. Apr. 14, 2016) .......... 19

*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559 (9th Cir. 2014) .......... passim

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013) .......... 14, 15

*LeDoux v. Outliers, Inc.*,
2025 WL 523908 (W.D. Wash. Feb. 18, 2025) .......... 5, 6, 7

*Meyer v. Benko*,
55 Cal. App. 3d 937 (1976) .......... 7

*Mitchell v. Veterans All., LLC*,
2025 WL 1088977 (D. Nev. Mar. 17, 2025) .......... 4

*Mohamed v. Uber Techs., Inc.*,
109 F. Supp. 3d 1185 (N.D. Cal. 2015) .......... 20

*Ngo v. BMW of N. Am., LLC*,
23 F.4th 942 (9th Cir. 2022) .......... 12, 13

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......... 4

*Nyulassy v. Lockheed Martin Corp.*,
120 Cal.App.4th 1267 (2004) .......... 21, 22

*Offley v. Fashion Nova, LLC*,
671 F. Supp. 3d 60 (D. Mass. 2023) .......... 16, 17, 18

*Pandolfi v. AviaGames, Inc.*,
2024 WL 4051754 (N.D. Cal. Sept. 4, 2024) .......... 21

*Pokorny v. Quixtar, Inc.*,
601 F.3d 987 (9th Cir. 2010) .......... 21, 22

*Ralls v. BMW of N. Am., LLC*,
2023 WL 8192538 (C.D. Cal. Aug. 14, 2023) .......... 14, 15

*Rios v. HRB Digital LLC*,
807 F. Supp. 3d 975 (N.D. Cal. 2025) .......... 20

*Robbins v. Mscripts, LLC*,
2023 WL 5723220 (N.D. Cal. Sept. 5, 2023) ........................................ 5, 6

*Rodriguez v. Harley-Davidson Motor Co., Inc.*,
2024 WL 3032945 (C.D. Cal. May 6, 2024) ........................................ 3

*Ronderos v. USF Reddaway, Inc.*,
114 F.4th 1080 (9th Cir. 2024) ........................................ 23

*Ruiz v. Moss Bros. Auto Grp.*,
232 Cal. App. 4th 836 (2014) ........................................ 5

*Saeedy v. Microsoft Corp.*,
757 F. Supp. 3d 1172 (W.D. Wash. 2024) ........................................ 6

*Specht v. Netscape Com. Corp.,*
306 F.3d 17 (2d Cir. 2002) ........................................ 10

*Suski v. Coinbase, Inc.*,
55 F.4th 1227 (9th Cir. 2022) ........................................ 18

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
25 Cal. App. 3d 987 (Ct. App. 1972) ........................................ 8

*Zamudio v. Aerotek, Inc.*,
733 F. Supp. 3d 931 (E.D. Cal. 2024) ........................................ 4

**STATUTES**

18 U.S.C. § 2520(e) ........................................ 22

Cal. Code Civ. Proc. § 338 ........................................ 22

Minn. Stat. Ann. § 626A.02 ........................................ 20

**OTHER AUTHORITIES**

Restatement (Second) Conflict of Laws § 187 ........................................ 19

# INTRODUCTION

Plaintiff Gil Hodges is a California resident who visited optum.com to search for doctors and schedule medical appointments. Unbeknownst to him, Defendant Optum, Inc. ("Optum" or "Defendant") had embedded tracking technology, Adobe Marketo Engage, on its website to intercept his sensitive information. That information includes medical conditions he was seeking to treat, the doctors he selected, and the care facilities he chose, which Defendant transmitted to Adobe for commercial purposes. Plaintiff brings this action to hold Defendant accountable for violations of the California Invasion of Privacy Act, the California Confidentiality of Medical Information Act, and the Federal Wiretap Act. *See generally* Complaint ("Compl."), ECF No. 1.

Defendant responds by seeking to avoid accountability before this Court through arbitration. Its Motion to Compel Arbitration and Stay Action ("MTC") (ECF No. 20) should be denied for at least four independent reasons.

First, Defendant's motion flops on the most basic contract formation question. Plaintiff's claims arise from his use of optum.com, and the terms governing optum.com contain no arbitration agreement. The arbitration clause Defendant invokes is ensconced in UnitedHealth Group's ("UHG") HealthSafe ID terms, a UHG platform governing access to health insurance portals like MyUHC. Defendant's own account records confirm that Plaintiff's supposed "re-assent" to the UHG Terms occurred on MyUHC, not on the Optum website. An arbitration agreement tied to one platform cannot be bootstrapped to compel arbitration of claims arising from a wholly different one.

Second, Defendant is a non-signatory to the UHG Terms and is not entitled to enforce them. The agreement Plaintiff allegedly accepted was a contract between Plaintiff and UHG, a distinct legal entity. The arbitration provision covers disputes between "you and we," with "we" expressly defined to mean UHG, not its affiliates.

Tellingly, the same Terms name Google as an express third-party beneficiary while leaving Defendant unmentioned. UHG's drafters plainly understood how to confer third-party rights when they intended to, and they did not do so for Defendant. The Ninth Circuit's case law requires the conclusion that Defendant cannot invoke an arbitration agreement it never signed.

Third, even if the UHG Terms could somehow reach this dispute, they cannot apply retroactively to Plaintiff's website visits from 2021 through 2024. Defendant does not produce any evidence of what Plaintiff was shown when he created his HSID account in January 2021. Its own declaration is silent on any sign-up process he may have encountered and offers only the conclusory assertion that Plaintiff "accepted" terms at that time. As to the April 23, 2025 "re-assent," the language of the Terms, which use present-tense throughout and include a 30-day opt-out running from "first agreeing," confirms a prospective-only scope. Applying the 2025 Terms retroactively to conduct that preceded them by years would be contrary to controlling Ninth Circuit authority.

Fourth, the delegation clause, which Defendant invokes to kick arbitrability questions to an arbitrator, is itself unenforceable. The clause is procedurally unconscionable because the delegation provision is improbably buried under a section titled "Exceptions to Agreement to Arbitrate," and because UHG reserves the right to modify the Terms at any time with immediate effect. It is substantively unconscionable for two reasons. First, the Terms impose a mandatory, one-sided pre-arbitral notice process that gives UHG and its affiliates a "free peek" at Plaintiff's claims. Second, the Terms purport to shorten applicable statutes of limitations to one year, cutting off claims that Plaintiff could not reasonably have discovered within that window.

As a result, Defendant's motion to compel arbitration should be denied.

## ARGUMENT

### I. UNITEDHEALTH GROUP'S 2025 TERMS OF USE DO NOT APPLY TO PLAINTIFF'S OPTUM WEBSITE VISITS BEFORE APRIL 23, 2025

#### A. Defendant Provides No Evidence of any Contract Prior to April 23, 2025.

Defendant discusses at length what Plaintiff "would have been presented with" had he accessed the "MyUHC or Optum.com patient portals" on April 23, 2025. MTC at 3, 4, 9, 11. But absent from Defendant's analysis is what it would have presented to Plaintiff when he "created his HSID account on January 5, 2021[.]" *Id.* at 9; *see also id.* at 2-3 (explicitly limiting the "Terms Assent Process" to when "[m]embers are ... prompted to re-consent to the Terms"). The Central District of California has decided that "[i]n the absence of any evidence or argument supporting the existence of a valid, written agreement to arbitrate, the Court cannot compel arbitration." *Aboyan v. Citigroup, Inc.*, 2025 WL 1720189, at *2 (C.D. Cal. May 22, 2025) (internal quotation marks and citation omitted). Because Defendant cannot show that Plaintiff agreed to any terms before April 23, 2025, it cannot compel Plaintiff to arbitrate.

Likewise, Defendant submits no evidence that Plaintiff had actual knowledge of UHG's terms prior to April 23, 2025. Under *Berman v. Freedom Fin. Network, LLC*, a website operator must show either actual knowledge of an agreement or inquiry notice for an enforceable contract to be found. 30 F.4th 849, 856 (9th Cir. 2022); *see also Rodriguez v. Harley-Davidson Motor Co., Inc.*, 2024 WL 3032945, at *2 (C.D. Cal. May 6, 2024) (Aenlle-Rocha, J.) (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014)). Defendant's declaration says: "The HSID account logs show that Plaintiff first created an HSID account on January 5, 2021, and in so doing, accepted the Terms of Use and Online Services Privacy Policy." Declaration of Heather Fisher, ECF No. 20-4 ("Fisher Decl.") ¶ 6. This statement is conclusory. In *Zamudio v. Aerotek, Inc.*, the Eastern District of California decided that "declarations that summarily assert that the plaintiff signed the arbitration agreement are insufficient

to authenticate the signature as an act of plaintiff." 733 F. Supp. 3d 931, 939–40 (E.D. Cal. 2024).

Here, Defendant's "declaration is deficient because it does not provide enough detail about the steps that Plaintiff took to create h[is] account ... or to sign the arbitration agreement." *Id.* at 1209. "[Defendant]'s declaration supports the conclusion that [Plaintiff] created an account ... but does not sufficiently explain [its] conclusion that [Plaintiff] personally" assented to "the arbitration agreement" at any time prior to April 23, 2025. *Mitchell v. Veterans All., LLC*, 2025 WL 1088977, at *3 (D. Nev. Mar. 17, 2025); *see also Ruiz v. Moss Bros. Auto Grp.*, 232 Cal. App. 4th 836, 839-841 (2014) (the defendant's reply declaration that each employee is "'presented'" with the arbitration agreement, and that "'[e]ach employee is required to log into the ... HR system'" with a "unique login ID and password" to "review and electronically execute" the arbitration agreement was insufficient to authenticate the signature as the plaintiff's).

Defendant also cannot prove inquiry notice of the terms of the contract. "To assist in the Court's inquiry, a defendant typically submits a screenshot of the way it maintains a user agreed to terms, allowing for evaluation of factors 'such as the size of the text, the color of the text as compared to the background, the location of the text, the obviousness of the hyperlink, and whether other elements on the screen clutter or otherwise obscure the textual notice.'" *LeDoux v. Outliers, Inc.*, 2025 WL 523908, at *8 (W.D. Wash. Feb. 18, 2025) (citing *Robbins v. Mscripts, LLC*, 2023 WL 5723220, at *5 (N.D. Cal. Sept. 5, 2023)). "Alternatively, the defendant may provide a 'sufficiently detailed declaration describing the account creation process, from an individual with knowledge of that process.'" *Id.* at *8 (citing *Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1192 (W.D. Wash. 2024) (in turn citing *Robbins*, 2023 WL 5723220, at *5)).

Here, Defendant fails to show any portion of what the webpage looked like in

2021. It is thus impossible to determine whether the "website provide[d] reasonably conspicuous notice of the terms to which the consumer will be bound[.]" *Berman*, 30 F.4th at 856. *See generally* MTD; *compare also* Fisher Decl. ¶¶ 4-6 *with id.* ¶¶ 9-11 (only providing one screenshot of the way it maintains that Plaintiff agreed to terms post-April 23, 2025). Nor has Defendant's declaration attempted to describe the account creation process. *See* Fisher Decl. ¶ 6 (summarily stating that "HSID account logs show that Plaintiff first created an HSID account on January 5, 2021, and in so doing, accepted the Terms of Use and Online Services Privacy Policy"). "Because of the deficiencies in Defendant['s] motion, Defendant[] ha[s] not met [its] burden" to show a contract existed prior to April 23, 2025. *LeDoux*, 2025 WL 523908, at *11.

### B. The Parties Did Not Mutually Assent to Arbitration, and the Optum.com Website Terms Do Not Contain an Arbitration Provision.

Defendant cannot establish mutual assent and that Plaintiff knew he was entering a contractual relationship with Defendant by using "MyUHC" as opposed to optum.com (the "Website"). *See* MTC at 2-3; Fisher Decl. Ex. 1, at PDF 8 (UHG records evincing that Plaintiff used "MyUHC" as opposed to the Optum Website on April 23, 2025).

"[U]nder California law, mutual assent is a required element of contract formation. ... Courts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (citing *Meyer v. Benko*, 55 Cal. App. 3d 937, 942–43 (1976)) (reversing the order granting the defendant's motion to compel arbitration). "'Th[e] principle of knowing consent applies with particular force to provisions for arbitration.'" *Id.* (quoting *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 993 (Ct. App. 1972).

"'If a party wishes to bind in writing another to an agreement to arbitrate future disputes,'" "'such purpose should be accomplished in a way that each party to the

arrangement will *fully and clearly comprehend* that the agreement to arbitrate exists and binds the parties thereto.'" *Id.* (quoting *Com. Factors Corp. v. Kurtzman Bros.*, 131 Cal. App. 2d 133, 136, 280 P.2d 146 (1955) (internal quotation marks and citation omitted)). Here, Plaintiff's claims turn on his use of the "Optum website (available at optum.com, hereinafter, the 'Website')." Compl. ¶ 1. But the Website Terms "do not contain an arbitration provision" at all. Declaration of Diaz Villafana ¶ 4 (citing Exhibit 1) (emphasis added). Nor is an arbitration provision contained in the Website Terms as of February 2024, "[t]he earliest available version" to Plaintiff. *Id.* ¶¶ 5-6 (citing Exhibit 2).[1][2]

Nevertheless, Defendant's declaration states that Plaintiff was "prompted to re-consent to the Terms of Use and Privacy Policy when logging into [his] HSID [HealthSafe ID] account[,]" MTC at 2. Defendant asserts that "Plaintiff could not have accessed ***either*** the MyUHC ***or*** Website ***patient portals*** on September 11, 2025, without having previously" gone through the re-assent process. MTC at 4; *see also* Fisher Decl. ¶ 10. But this argument is a red herring; Defendant's own HSID account records establish that Plaintiff did not assent to any terms on the Optum Website, but instead "re-assented" on the "***MyUHC***" website:

| | | | | |
|---|---|---|---|---|
| 04/23/25 14:35 CST | MyUHC | gilhodges001 | User Session is created | 35.149.49.23 |

Fisher Decl. Ex. 1, at PDF 8.

Defendant muddles this mutual assent issue by arguing that: "Plaintiff has been enrolled in a UnitedHealthcare AARP Medicare Advantage medical insurance policy" and that "UnitedHealthcare's AARP Medicare Advantage plan includes prescription drug coverage managed through OptumRx." Fisher Decl. ¶ 5. But Defendant cannot

[1] The lack of notice and mutual assent as to arbitration apply with equal force to any asserted waiver of Plaintiff's right to bring a class action lawsuit.

[2] Additionally, Exhibit 2 to the Diaz Villafana Declaration shows the Website Terms were last updated March 7, 2023.

use Plaintiff's enrollment in United Healthcare's AARP policy as a basis to compel arbitration. As the Ninth Circuit explained in *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559 (9th Cir. 2014), an "agreement could clearly state that [a third party] has a relationship with [a defendant] to provide [the third party's] customers with a trial service, and that therefore the [third party's] customer is entering into a contractual relationship with [defendant]," but it did not. *Id.*

So too here. Nowhere in the UHG terms does it "clearly state" that a UHG patient is entering a contract with Defendant. S*ee generally* Fisher Decl. Ex. 4. To the contrary, the UHG terms state that users may, if they so choose, "learn more about any of the products or services listed below[,]" including "products or services" from "Optum Pharmacy[.]" Fisher Decl. Ex. 4, at PDF 24. This language does not provide the "unambiguous manifestation of assent" the law requires. *Knutson*, 771 F.3d at 569 (quoting *Specht v. Netscape Com. Corp.,* 306 F.3d 17, 31 (2d Cir. 2002)); *accord Berman*, 30 F.4th at 856.

Nor does Defendant argue that Plaintiff encountered the "Terms Assent Process" while on www.optum.com; for example, when Plaintiff "searched for an ophthalmologist, and for primary care doctors" as far back as 2023. Compl. ¶ 11. As shown by Defendant's records, any re-assent to UHG's terms appears to have occurred on MyUHC, not the Website. *See* Fisher Decl. Ex. 1, at PDF 8. Moreover, Defendant's records show that Plaintiff logged in to "OptumRX" just one time, on October 12, 2024 (Fisher Decl. Ex. 1, at PDF 10), and accessed either "Medicare[,]" "UHC Mobile[,]" or other non-Optum-platforms dozens of times since September of 2023.[3] *Id.*, at 10-11. This case is even worse than in *Knutson* where the plaintiff did not receive an agreement from the defendant until a month after he activated his product. 771 F.3d at 562. Here, Plaintiff would have had notice of the re-assent

---

[3] As explained *supra*, Argument § I.A., Defendant is silent as to what any account creation process looked like when Plaintiff "created his HSID account on January 5, 2021[.]"

process years after he used the Website.[4]

### C. Defendant Is a Non-Signatory to the Agreement, and the Arbitration Provision's Terms Are Expressly Limited to UHG and Plaintiff, Not Defendant.

Defendant argues that Plaintiff is subject to arbitration because "[t]he Terms Plaintiff assented to on April 23, 2025 governed his use of 'UnitedHealth Group's ... and Affiliates'" online services. MTC at 4. As an initial matter, Defendant states that it is "an affiliate of UnitedHealthcare Insurance Company" and a "subsidiary" "of UnitedHealth Group," or UHG. MTC at 2. Defendant's argument fails for two reasons.

First, Defendant "is not entitled to enforce the Terms as a third-party beneficiary." *Faucett v. Move, Inc.*, 2025 WL 1112935, at *2 (9th Cir. Apr. 15, 2025). The "Terms of Use and Privacy Policy on April 23, 2025" was a contract entered between Plaintiff and UHG, not Defendant (*see generally* Fisher Decl. Ex. 4), and "a non-signatory is a third-party beneficiary only to a contract 'made expressly for [its] benefit.'" *Faucett*, 2025 WL 1112935, at *2 (citing *Ngo v. BMW of N. Am., LLC*, 23 F.4th 942 (9th Cir. 2022) (affirming the lower court's order denying the defendant's motion to compel arbitration).

Here, the agreement between Plaintiff and UnitedHealth Group ("UHG") was not made "expressly for" Defendant's benefit. The Terms demonstrate that UHG knew how to designate third-party beneficiaries when it intended to do so: Google and Apple are expressly named as "third-party beneficiar[ies] to the Terms[,]" while Defendant is not named as a third-party beneficiary. *See* Fisher Decl. Ex. 4, at PDF 28 ("you acknowledge and agree that Google is a third-party beneficiary to the Terms

---

[4] Nor has Defendant explained whether Plaintiff used a mobile application when he supposedly assented to the UnitedHealth Group Terms and Privacy Policy earlier, on January 5, 2021. This is important because the Terms have a separate section as to "Mobile Devices and Applications" which twice state that "These Terms are between ***you and us***"—*i.e.*, Plaintiff and UHG, but not Defendant. Fisher Decl., Ex. 4, at PDF at 26-28.

....”); *see also id.* at 27 (“Although these Terms are entered into between you and Company (and not Apple), Apple, as a third-party beneficiary under these Terms, will have the right to enforce these terms against you.”). UHG thus understood that it had to name a third-party beneficiary when it intended to create one. UHG’s omission of Defendant as a “third-party beneficiary” is an unambiguous drafting choice.

Second, even if Defendant could invoke some provisions of the Terms, it cannot bind Plaintiff to arbitration. “[W]hile several provisions of the Terms mention Affiliates, the arbitration provision does not.” *Faucett*, 2025 WL 1112935, at *1. Just as in *Faucett*, UHG’s arbitration provision’s mandate to arbitrate “any claims relating to these Terms, or the Online Service” (ECF No. 20-4 at 21), “the arbitration provision does not expressly apply to Affiliates” (*Faucett*, 2025 WL 1112935, at *2 n.3 (citing *Ngo v. BMW of N. Am., LLC*, 23 F.4th 942, 946-47 (9th Cir. 2022)), and is likewise insufficient.

The Ninth Circuit decision in *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013) is dispositive. There, the Ninth Circuit found there was no “clear and unmistakable evidence that Plaintiffs and Toyota agreed to arbitrate arbitrability. While Plaintiffs may have agreed to arbitrate arbitrability in a dispute with the Dealerships, the terms of the arbitration clauses are expressly limited to Plaintiffs and the Dealerships.” *Id.* The Ninth Circuit made this finding based on the language of the arbitration clause, which stated “‘[e]ither you or we may choose to have any dispute between you and us decided by arbitration.’ The language of the contracts thus evidences “[the p]laintiffs’ intent to arbitrate arbitrability with the Dealerships *and no one else*. The Dealerships are not a party to this action.” *Id.* (emphasis added).

*Ralls v. BMW of N. Am., LLC* leads to the same conclusion. 2023 WL 8192538 (C.D. Cal. Aug. 14, 2023) (denying the motion to compel arbitration). In *Ralls*, the court reasoned: “[T]he agreement in the instant case specifies that ‘me’ refers to the

buyer and 'you' and 'your' refer to the seller or the seller's assignee, but it does not identity any assignee." *Id.* at *4.

The same conclusion applies here. UHG's Terms state: "***You*** and ***we*** agree to resolve any claims relating to these Terms, or the Online Services, through final and binding arbitration...." Fisher Decl. Ex. 4, at PDF 21 (emphasis added). But the Terms specifically define UHG as '***we***,' 'us,' 'our,' and 'Company'. *Id.* at 17. Those same Terms specifically place "Affiliates" outside of the definition of "we." *Id.* Thus, the UHG terms do not contain "clear and unmistakable evidence" that Plaintiff agreed to arbitrate his claims with non-signatory Defendant. *Kramer*, 705 F.3d at 1127.

**D. The Arbitration Agreement is Not Retroactive.**

As explained *supra*, Argument § I.A, Defendant has failed to meet its burden to show that Plaintiff assented to the referenced Terms "[w]hen Plaintiff created his HSID account on January 5, 2021, ...." MTC at 9. Moreover, the Terms as of April 23, 2025 include present-tense language and a 30-day opt-out provision. These features, among others, cut against retroactive application of the Terms.

While "*[s]ome* courts have retroactively applie[d] arbitration agreements where the language of the agreement could *not* be read to include a temporal limitation," other courts *have* properly "declined to find retroactive effect where the language of the agreement was not retroactive on its face." *Castro v. ABM Indus., Inc.*, 2018 WL 2197527, at *3 (N.D. Cal. May 14, 2018) (emphasis added) (holding that an "arbitration clause ... applies only to those claims brought by [the plaintiffs] *after* the effective date of the relevant" agreement) (emphasis added and in original).

Until recently, "[t]he Ninth Circuit has not spoken directly on this issue." *Id.* In 2024, however, the Ninth Circuit held that retroactive application of terms was "particularly disadvantageous to consumers where "[b]y merely 'continuing to use ... [the website] after that date, [a consumer] agrees to the changes.'" "[B]ecause [consumers] often revisit the site in order to use previously purchased digital tickets,"

"[i]t is thus nearly impossible to avoid retroactive application of any changes Ticketmaster imposes." *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670, 678 (9th Cir. 2024).

The same reasoning in *Heckman* applies here: many consumers, like Plaintiff, used Defendant's website years before they had constructive notice or assented[5] to the UnitedHealth Group 2025 terms. Yet the UHG Terms assert that "[b]y *continuing to use* the Online Services, you consent to any changes to our Terms." Fisher Decl. Ex. 4, at PDF 17 (emphasis added). This position is untenable as UHG would effectively force consumers to choose between preserving access to their historical health data and records and avoiding the retroactive application of the agreement.

Similarly, "[t]he First Circuit has held that arbitration provisions *may* apply retroactively when the language is sufficiently broad, even without explicit language reflecting retroactive effect." *Offley v. Fashion Nova, LLC*, 671 F. Supp. 3d 60, 66 (D. Mass. 2023) (emphasis added) (internal citation omitted) (holding that an arbitration provision in an online retailer's website's terms of service did not apply retroactively). Nevertheless, three factors, each of which is present here, show that the agreement fails to contain sufficiently broad language to apply retroactively. *See id.*, at 67.

First, the *Offley* court found that terms' language: "'any dispute relating in any way to your visit to, or use of, the Website ... or any purchase or otherwise related to this Agreement'" "cannot be read naturally to apply to prior purchases." *Id.* (emphasis added in original). Here, the UHG Terms contains a limitation just like the one the *Offley* court found could not apply retroactively:

> You and we agree to resolve any claims relating to these Terms,

[5] Defendant argues that "[m]embers are periodically prompted to re-consent to the Terms of Use and Privacy Policy," MTC at 3, but this argument presupposes that members assented in the first place. As explained *supra*, Argument § I, Defendant fails to show that members assented to the UHG terms in the first instance and its conclusory declaration to that effect is insufficient.

> or the Online Services, through final and binding arbitration, ....

Fisher Decl., Ex. 4 at PDF 21 (emphasis added).

Second, the *Offley* court found that "the language of the Terms repeatedly uses the present tense 'purchase' and 'purchases,' leaving no indication that the Terms were intended to cover prior transactions." 671 F. Supp. 3d at 67. Likewise, the Northern District of California court in *Castro*, 2018 WL 2197527, at *4, found that agreements' "use of the present tense 'arise' suggests that the clauses govern present and future, but not past, conduct."

In that latter case, *Castro*, "the operative language of the [agreements]" was even stronger than UHG's here; specifically, the agreements at issue in *Castro* specifically "require[d] 'binding mediation and arbitration' to resolve 'all Covered Claims, *whenever they arise.*'" *Id.* at *4 (emphasis in original). Nevertheless, the *Castro* court rejected the defendant's argument to apply the arbitration agreement "'to claims regardless of when those claims accrued, including ... before the effective date of the [agreements].'" *Id.* at *4; *see also id.* at *5.

Here, too, the UHG Terms contain present-tense phrasing:

> These Terms of Use ... describe the rules ***for using*** UnitedHealth Group's .... online and mobile websites, platforms, services and applications....
>
> ***By using*** our Online Services, you agree to these Terms ....
>
> Your affirmative act of ***using*** the Online Services, ***or registering*** for membership, constitutes your electronic signature to these Terms ....

ECF No. 20-4, at PDF 17 (emphasis added).

> The terms of these arbitration provisions will also apply to any claims asserted by you against any present or future parent or affiliated company of ours ***arising out of*** your use of the Online Services.

ECF No. 20-4, at PDF 23 (emphasis added).

Third, the *Offley* court agreed "the 30-day opt-out provision cuts against retroactive application." 671 F. Supp. 3d at 67. Likewise, here, the UHG Terms contain a 30-day opt out that only begins to run when the user "first agree[s] to these terms," (Fisher Decl. Ex. 4, at PDF 22), pre-supposing a point in time when Plaintiff *begins* to be bound:

> **How to Opt Out of Agreement to Arbitrate.** If you don't agree to arbitrate, you may opt out within 30 days of first agreeing to these terms by sending a letter to us. The letter must specify your first and last name, username, mailing address, and state that you are opting out of this arbitration provision.

Fisher Decl. Ex. 4, at PDF 22.

Taken together, these three factors confirm that the UHG arbitration provision applies, if at all, only prospectively, and cannot bar Plaintiff's 2021–2024 activities on the Website.

## II. THE DELEGATION CLAUSE IS NOT ENFORCEABLE

Defendant argues that "gateway questions regarding the scope or enforceability of the Terms' arbitration provision are properly reserved for the arbitrator." MTC at 14. This argument fails out of the gate for the reasons *supra*, Argument § I, namely, because of a lack of mutual assent given Defendant is a non-signatory to the terms and because the arbitration provisions evince an intent to arbitrate arbitrability with UHG and no one else.

Even if the arbitration agreement *did* contain clear and unmistakable evidence that Plaintiff and Defendant agreed to arbitrate arbitrability, Defendant's argument would still only pertain to the scope or enforceability of the purported contract as of April 23, 2025, not from 2021 to 2024, because "[i]ssues of contract formation may not be delegated to an arbitrator." *Suski v. Coinbase, Inc.*, 55 F.4th 1227, 1229 (9th Cir. 2022), *aff'd*, 602 U.S. 143 (2024); *see also supra*, Argument §§ I.A and I.B. "[T]he Supreme Court clarified that contract-*formation* issues are *always* matters for judicial resolution. … [T]he issues reserved to the courts for decision 'always include'

whether an arbitration agreement was formed, even in the presence of a delegation clause." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022) (internal citations omitted).

"In deciding whether a delegation clause is unenforceable, our analysis is not limited to the bare text of the clause." *Heckman*, 120 F.4th at 680, *cert. denied*, 146 S. Ct. 96 (2025) (holding a delegation clause both procedurally and substantively unconscionable). "'There is a sliding scale where the greater the evidence of procedural unconscionability, the less evidence is needed of substantive unconscionability. And vice versa.'" *Apexxus LLC v. OptumRx, Inc.*, 2025 WL 3707249, at *12 (N.D. Cal. Dec. 22, 2025) (finding an Optum delegation clause procedurally unconscionable) (internal citation omitted).

### A. Application of Minnesota Law Would Be Contrary to California Public Policy.

As an initial matter, Defendant argues that "Minnesota law governs." MTC at 13 n.6. Not so. "Federal courts sitting in diversity must apply 'the forum state's choice of law rules to determine the controlling substantive law.'" *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005) (internal citation omitted). "In determining the enforceability of contractual choice-of-law provisions, California courts apply the principles set forth in Restatement (Second) Conflict of Laws § 187." *Daugherty v. Experian Info. Sols., Inc.*, 847 F. Supp. 2d 1189, 1195 n.4 (N.D. Cal. 2012) (internal citation omitted).

Here "given the absence of any equivalent protections, applying Minnesota law [] [is] contrary to the fundamental policy of California." *Kissel v. Code 42 Software, Inc.*, 2016 WL 7647691, at *4 (C.D. Cal. Apr. 14, 2016) (cleaned up). Specifically, Minnesota's one-party wiretap law[6] would violate California's fundamental public

[6] *See* Minn. Stat. Ann. § 626A.02 ("It is not unlawful under this chapter for a person acting under color of law to intercept a wire, electronic, or oral communication, where such person is a party to the communication ….").

policy of all-party consent under CIPA: "The purpose of the act [CIPA] was to protect the right of privacy by, among other things, requiring that all parties consent to a recording of their conversation." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 769 (2002).[7]

**B. The Delegation Clause is Procedurally Unconscionable.**

A contract may be found procedurally unconscionable when it contains a surprise. "'Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms.'" *Mohamed v. Uber Techs., Inc.*, 109 F. Supp. 3d 1185, 1205 (N.D. Cal. 2015), *aff'd in part, rev'd in part and remanded*, 836 F.3d 1102 (9th Cir. 2016), and *aff'd in part, rev'd in part and remanded*, 848 F.3d 1201 (9th Cir. 2016) (internal citation omitted)); *see also Heckman*, 120 F.4th 670, *cert. denied*, 146 S. Ct. 96 (2025).

Here, there is surprise because the UHG "Terms also permit unilateral modification of the Terms without prior notice." *Heckman*, 120 F.4th at 682. Specifically, the UHG terms state:

> ***We may change these Terms at any time***, .... ***Any modifications will be effective immediately*** upon such posting. By continuing to use the Online Services, you consent to any changes to our Terms.

Fisher Decl. Ex. 4, at PDF 17 (emphasis added).[8]

There is additional surprise because UnitedHealth Group's "delegation provision" is located underneath a header titled: "**Exceptions to Agreement to Arbitrate**." Fisher Decl. Ex. 4, at PDF 22. No reasonable user of Defendant's Website would expect to find the scope of what they agreed to arbitrate under a clause

[7] Even if Minnesota choice of law provision did apply the result stays the same for the reasons discussed below.

[8] "[T]he existence of an opt-out clause does not automatically render an arbitration agreement procedurally conscionable; even if an agreement is not adhesive, it can still be found sufficiently surprise-laden or oppressive to implicate procedural unconscionability[,]" as described below. *Rios v. HRB Digital LLC*, 807 F. Supp. 3d 975, 986 (N.D. Cal. 2025), appeal docketed, No. 25-7199 (9th Cir. Nov. 14, 2025).

regarding the "[e]xceptions ... to [a]rbitrate". "To the extent" Defendant "suggest[s] there still is no element of unfair surprise because Website users were pointed to the section on arbitration and could have read through the section to get details on the terms of the arbitration agreement, the Court does not agree." *Pandolfi v. AviaGames, Inc.*, 2024 WL 4051754, at *10 (N.D. Cal. Sept. 4, 2024), *aff'd*, 2025 WL 2463742 (9th Cir. Aug. 27, 2025). In that case, *Pandolfi*, "[a]lthough some language [wa]s displayed in 'ALLCAPS,' ... that method of emphasis is not especially effective given the ... light grey font" and, moreover, given there was "no bolding or underlining to call out … of particular note, the delegation clause[,]" the defendant's argument "that there is *no* element of unfair surprise lack[ed] merit." *Id.*, at *11. Likewise, here, while "Exceptions to Agreement to Arbitrate" is bolded in the UHG Terms, there is nothing to call attention to or note the delegation clause, which has no bolded, underlined, or capitalized language. *See* Fisher Decl. Ex. 4, at PDF 22.

### C. The Delegation Clause is Substantively Unconscionable.

Moreover, there is substantive unconscionability. The Ninth Circuit has explained "something more than the absence of mutuality is required ... to find the provision unconscionable." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1015 (9th Cir. 2023).

#### 1. The Terms Contain One-Sided, Mandatory Pre-Arbitral Dispute Resolution.

"Something more" here is satisfied "based on a lack of mutuality and unfair dispute resolution processes." *Id.* (citing *Nyulassy v. Lockheed Martin Corp.*, 120 Cal.App.4th 1267 (2004) and *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 998 (9th Cir. 2010) (applying California law)).

Here, Defendant points to the provisions evincing a lack of mutuality and unfair dispute resolution processes in the UHG terms: "Contact legalmail@uhg.com if the dispute is with UnitedHealth Group, UnitedHealthcare, Optum, or Rally Health. If the dispute is not resolved within 30 days of contact, you or we may bring a formal

arbitration proceeding as described below." Fisher Decl., Ex. 4, at PDF 21; *see also* MTC at 5 (citing this provision).

"As was the case in *Nyulassy*, the unilateral requirement that [Plaintiff] submit[s] [his] claims" to UHG "before proceeding to arbitration unfairly hampers" consumers like Plaintiff "by subjecting them to 'a[] [provider]-controlled dispute resolution mechanism' that provides" potential defendants "with a 'free peek' at" Plaintiff's case. *Pokorny*, 601 F.3d at 999 (internal citations omitted).

**2. The Terms Limit Relevant Statutes of Limitations to One Year.**

Moreover, just like in *Nyulassy* and *Pokorny*, "[t]he provisions in [this] case[] contain[s] a third factor: a time restriction on the non-drafting parties' ability to bring claims against the drafting party." *Bielski*, 87 F.4th at 1015. Here, Plaintiff "must initiate any cause of action within one year after the claim has arisen, or you will be barred from pursuing any cause of action." Fisher Decl., Ex. 4, at PDF 23.

Plaintiff brings claims under the Federal Wiretap Act and the California Confidentiality of Medical Information Act, which contain at least two- and three-year limitations periods. *See* 18 U.S.C. § 2520(e) ("A civil action under this section may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation."); Cal. Code Civ. Proc. § 338 (providing for a three-year statute of limitations for "[a]n action upon a liability created by statute"). These limitation periods are affected by the concealed nature of Plaintiff's privacy injury which necessitates the application of the discovery rule and/or fraudulent concealment doctrines.

Here, Plaintiff was unaware of his injury until years after it occurred. At no point did Plaintiff know that "Defendant assisted third-party Adobe with intercepting Plaintiff's communications, including those that contained PII, PHI, and related confidential information." Compl. ¶ 14. "In fact, to the present Defendant has not conceded, acknowledged, or otherwise indicated to its users that it has disclosed or

released their personal information to unauthorized third parties." *Id.* ¶ 98. "Plaintiff first discovered that Defendant had collected and shared his personal information without his consent in or around November 2025 after contacting undersigned counsel and discussing potential claims against Defendant." *Id.* ¶ 101.

The Supreme Court has noted that, "when the injury is self-concealing," as the privacy injury here, "private parties may be unaware that they have been harmed. Most of us do not live in a state of constant investigation...." *Gabelli v. S.E.C.*, 568 U.S. 442, 450 (2013). "The California Supreme Court has described the discovery rule as 'the most important exception to the general rule that a cause of action accrues when the allegedly wrongful result occurs.'" *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1095 (9th Cir. 2024) (internal citation omitted) (finding a filing provision that deprives a plaintiff of the discovery rule unconscionable).

Enforcing a one-year contractual limitations period against claims subject to the discovery rule, for an injury Defendant actively concealed through invisible tracking technology, is precisely the kind of one-sided provision that courts have found unconscionable.

## CONCLUSION

For these reasons, this Court should deny Defendant's Motion and allow this litigation to proceed in this Court.

Dated: April 1, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Ines Diaz Villafana*

Ines Diaz Villafana (State Bar No. 354099)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455

Facsimile: (925) 407-2700
Email: idiaz@bursor.com

*Attorney for Plaintiff*

**CERTIFICATE OF COMPLIANCE PURSUANT TO L.R. 11-6.2**

The undersigned, counsel of record for Plaintiff Gil Hodges certifies that this brief contains 5,732 words, which complies with the word limit of L.R. 11-6.1.

By: */s/ Ines Diaz Villafana*