**HOGAN LOVELLS US LLP**
Vassi Iliadis (SBN 296382)
James Ettinger (SBN 344292)
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
vassi.iliadis@hoganlovells.com
jay.ettinger@hoganlovells.com

Adam Cooke (admitted *pro hac vice*)
555 Thirteenth Street NW
Washington, D.C. 20004
Telephone: (202) 637-5600
adam.a.cooke@hoganlovells.com

*Attorneys for Defendant*
*Optum, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GIL HODGES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OPTUM, INC.,<br><br>Defendant. | Case No. 5:25-cv-03325-FLA-AJR<br><br>The Honorable Fernando L. Aenlle-Roche<br><br>**REPLY IN SUPPORT OF DEFENDANT OPTUM, INC.'S MOTION TO COMPEL ARBITRATION AND STAY ACTION**<br><br>Hearing Date: May 8, 2026<br>Time: 1:30 p.m.<br>Courtroom 6B |

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

ARGUMENT ..... 1

I. Plaintiff Does Not Dispute That He Consented to the Terms On April 23, 2025 ..... 1

A. Optum is a Direct Party to the Terms and the Arbitration Agreement ..... 2

B. The Terms Directly Apply to Plaintiff's Use of Optum's Website ..... 3

II. Plaintiff Agreed to Delegate Gateway Issues of Arbitrability to the Arbitrator ..... 5

A. The Delegation Provision Is Not Procedurally Unconscionable ..... 7

B. The Delegation Provision is Not Substantively Unconscionable ..... 8

III. Even if the Court Were to Consider Plaintiff's Gateway Issues of Arbitrability, Each Should Be Resolved in Optum's Favor ..... 10

A. Optum Is, at Minimum, a Third-Party Beneficiary to the Arbitration Agreement ..... 10

B. The Terms' Arbitration Agreement Applies Retroactively ..... 11

CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Chung Nam, LLC v. Mitsui O.S.K. Lines, Ltd.*,
2023 WL 8845213 (C.D. Cal. 2023) .......... 9

*Apexxus LLC v. OptumRx, Inc.*,
2025 WL 3707249 (N.D. Cal. Dec. 22, 2025) .......... 10

*Bank of the W. v. Superior Ct.*,
2 Cal. 4th 1254 (1992) .......... 3

*Castro v. ABM Indus., Inc.*,
2018 WL 2197527 (N.D. Cal. May 14, 2018) .......... 12, 13

*Chien v. Bumble Inc.*,
641 F. Supp. 3d 913 (S.D. Cal. 2022) .......... 6

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
2074 F.3d 1126 (9th Cir. 2000) .......... 12

*Comedy Club, Inc. v. Improv W. Assocs.*,
553 F.3d 1277 (9th Cir. 2009) .......... 3

*Flores v. Coinbase*,
2023 WL 3564756 (C.D. Cal. 2023) .......... 9

*Glacier Park Iron Ore Props., LLC, v. U.S. Steel Corp.*,
961 N.W.2d 766 (Minn. 2021) .......... 6

*Han v. Mobil Oil Corp.*,
73 F.3d 872 (9th Cir. 1995) .......... 9

*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559 (9th Cir. 2014) .......... 3, 4

*Kristian v. Comcast Corp.*,
446 F.3d 25 (1st Cir. 2006) .......... 13

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) .......... 6, 7, 8

*Mohammed v. T-Mobile USA, Inc.*,
2018 WL 6249910 (E.D. Cal. Nov. 29, 2018) .......... 12

*Moreno v. Sanchez*,
106 Cal. App. 4th 1415 (2003) .......... 10

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
460 U.S. 1 (1983) .......... 13

*Ngo v. BMW of N. Am., LLC*,
23 F.4th 942 (9th Cir. 2022) .......... 11

*Nguyen v. Applied Med. Res. Corp.*,
4 Cal. App. 5th 232 (2016) .......... 9

*Nyulassy v. Lockheed Martin Corp.*,
120 Cal. App. 4th 1267 (2004) .......... 9

*Offley v. Fashion Nova*,
671 F. Supp. 3d 60 (D. Mass. 2023) .......... 13

*Panameno v. Charter Commc'ns, LLC*,
2025 WL 3482621 (C.D. Cal. Dec. 1, 2025) .......... 4

*Pandolfi v. AviaGames, Inc.*,
No. 23-cv-05971-EMC (N.D. Cal.), Dkt. 73-1 .......... 8

*Patrick v. Running Warehouse, LLC*,
2022 WL 10584136 (C.D. Cal. Oct. 18, 2022) .......... 7

*Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*,
55 Cal. 4th 223 (2012) .......... 6

*Ratajesak v. New Prime, Inc.*,
2019 WL 1771659 (C.D. Cal. Mar. 20, 2019) .......... 6

*Rendon v. T-Mobile USA, Inc.*,
747 F. Supp. 3d 1314 (C.D. Cal. 2024) .......... 5

*Ronderos v. USF Reddaway, Inc.*,
114 F.4th 1080 (9th Cir. 2024) .......... 7

*Sauer v. Experian Info. Sols., Inc.*,
2022 WL 2163016 (C.D. Cal. May 12, 2022) .......... 6

*Serpa v. California Sur. Investigations, Inc.*,
215 Cal. App. 4th 695 (2013) .......... 9

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) .......... 12

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
925 F.2d 1136 (9th Cir. 1991) .......... 3

*Tompkins v. 23andMe, Inc.*,
840 F.3d 1016 (9th Cir. 2016) .......... 7, 10

*Wiseley v. Amazon.com, Inc.*,
709 F. App'x 862 (9th Cir. 2017) .......... 7

## INTRODUCTION

Plaintiff's Opposition ("Opp.") does not meaningfully dispute the central facts that support Defendant Optum, Inc.'s ("Optum") Motion. Plaintiff concedes he received notice of and assented to the Terms of Use ("Terms") on April 23, 2025. Because those Terms contain a broad arbitration agreement that applies to claims involving UnitedHealth Group's ("UHG") affiliates, including Optum, and an express delegation provision assigning gateway questions of arbitrability to the arbitrator, the inquiry should stop there and Plaintiff should be compelled to arbitrate his claims. Rather than confronting the plain language of the Terms, Plaintiff attempts to manufacture ambiguity by misreading plain contractual language and by raising arguments that have been delegated to the arbitrator.

Because Plaintiff agreed to arbitrate and delegate questions of arbitrability to the arbitrator, Plaintiff's claims should proceed in individual arbitration, and this action should be stayed pending completion of those proceedings.

## ARGUMENT

### I. Plaintiff Does Not Dispute That He Consented to the Terms On April 23, 2025.

Plaintiff does not dispute that he assented to the Terms on April 23, 2025, via the HSID login portal.[1] *See generally* Opp.; Dkt. 20-1 ("Mot.") at 2–4. Nor does Plaintiff contest that the webpage he was presented with in April 2025 provided him with "reasonably conspicuous" notice of the Terms or that he "unambiguously manifested" his assent to be bound by the Terms by selecting the checkbox with the clear disclaimer: "[b]y selecting this checkbox, I have reviewed and agree to the Terms of Use, Privacy Policy, and Consumer Communications Notice." *See* Mot. 10–14. Because Plaintiff agreed to be bound by the arbitration provision,

[1] Plaintiff spills much ink about enforceability of his consent to the Terms when creating his HSID account on January 5, 2021, but this is irrelevant to the Court's inquiry because it is undisputed that he consented to the Terms as recently as April 23, 2025.

his claims against Optum should proceed to arbitration.

### A. Optum is a Direct Party to the Terms and the Arbitration Agreement.

Contrary to Plaintiff's suggestions otherwise, *see* Opp. 8–9, Optum is a *direct party* to the Terms. The Terms govern Plaintiff's use of "UnitedHealth Group's . . . and Affiliates' . . . online and mobile websites, platforms, services and applications ('Online Services')." Terms 1. "Affiliates" is described as "an entity controlling, controlled by, or under common control with a named party." *Id*. Because Optum is a subsidiary of UHG, *see* Mot. 2, it is an "Affiliate" under the Terms. As an Affiliate, Optum's Website is among the "Online Services" expressly governed by the Terms. Terms 1. These circumstances materially differ from Plaintiff's cited authority, where the relevant entity was *not* a party to the contract, and instead, sought to enforce an arbitration provision as an unnamed third-party beneficiary. *See* Opp. 8–10.

Plaintiff's alleged use of Optum's Website also clearly falls within the scope of the arbitration agreement, which covers "any claims relating to these Terms, or the Online Services," Terms 5. The "Informal Resolution" provision, for example, provides an email to contact if the user's "dispute is with UnitedHealth Group, UnitedHealthcare, ***Optum***, or Rally Health." *Id*. (emphasis added). Additionally, the arbitration agreement specifies that the arbitration provisions "also apply to any claims . . . against any present or future parent or affiliated company . . . arising out of your use of the Online Services." *Id*. at 6.

Plaintiff ignores these uncontroverted facts, arguing that the term "we" in the Terms excludes Optum and other Affiliates from enforcing the arbitration agreement. *See* Opp. 10. This argument is misplaced for several reasons.

*First*, the terms "we," "us," and "our" are all first-person plural pronouns, which indicates that they are used to refer to more than a single UHG entity. *Second*, the purpose of the Terms is to govern individuals' use of the "Online

Services," which, by definition, includes UHG's "Affiliates' . . . online and websites, platforms, services and applications." Terms 1. It would be illogical for Terms to govern the use of Affiliates' Online Services and for the arbitration provisions to cover claims relating to the use of the Affiliates' Online Services, while simultaneously excluding the Affiliates from enforcing the very same arbitration agreement. *See Bank of the W. v. Superior Ct.*, 2 Cal. 4th 1254, 1265 (1992) ("[L]anguage in a contract must be construed in the context of that instrument as a whole."). That is why the agreement references *Optum* specifically. Terms 5. *Third*, the Terms use the phrase "our Online Services" twelve times, which strongly indicates that the term "our," much like "we" and "us," should be understood to include *all* providers of the Online Services, including UHG's Affiliates.

Finally, if any ambiguity remains as to the proper interpretation of the terms "we," "us," and "our," "[i]t is well established that where the contract contains an arbitration clause, there is a presumption of arbitrability." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," including when interpreting the "construction of the contract language itself." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1139 (9th Cir. 1991).

**B. The Terms Directly Apply to Plaintiff's Use of Optum's Website.**

Plaintiff next attempts to sidestep the arbitration agreement by arguing that the contract formation is invalid because (i) Plaintiff consented while accessing his MyUHC patient portal and (ii) Optum's Website's Terms of Use ("TOU") do not include an arbitration agreement. These arguments are meritless.

Plaintiff asserts that because he consented to the Terms while using his MyUHC account as opposed to Optum's Website, there was no mutual assent, likening the situation to *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559 (9th Cir. 2014). Opp. 5–6. A comparison of the circumstances here to *Knutson* undermines Plaintiff's argument.

In *Knutson*, the plaintiff purchased a vehicle from Toyota that included a 90-day trial subscription to Sirius XM satellite radio. *Id*. at 561–62. The plaintiff's purchase agreement with Toyota did not disclose any Sirius XM relationship; nor did he receive any documents from Sirius XM at the time of purchase. *See id*. at 566. Nearly a month later, Sirius XM mailed plaintiff a "Welcome Kit" that included an undisclosed Sirus XM Customer Agreement, which stated that by accessing the service, he agreed to be bound by that Agreement. *Id*. at 562. The Ninth Circuit concluded no enforceable contract was created because it was not reasonable for the plaintiff to "be expected to understand that purchasing a vehicle from Toyota would simultaneously bind him . . . to any contract with Sirius XM." *Id*. at 566–68. The panel reasoned that plaintiff's lack of notice "could have [been] easily remedied by Toyota" if the purchase agreement had disclosed the buyer's new relationship with Sirus XM, but it did not. *See id*. at 568.

Here, by contrast, Plaintiff enrolled in a UnitedHealthcare AARP Medicare Advantage medical insurance plan that included prescription drug services provided through OptumRx. Mot. 2. Plaintiff then created an HSID account, necessary to access both his MyUHC and Optum patient portals, which he then used to access the OptumRx portal. *Id*. Therefore, unlike *Knutson*, "[a] reasonable person in [Plaintiff's] position could . . . be expected to understand that" his creation of an HSID account would govern his use of Optum's Website. *See Knutson*, 771 F.3d at 566. Moreover, unlike *Knutson*, Plaintiff *does not dispute* that he received reasonably conspicuous notice of the Terms and that he manifested his affirmative assent via clickwrap consent. *See supra* pp. 2–3. This case further differs from *Knutson* because the Terms expressly notified Plaintiff that the agreement governed his use of the Optum Website. Indeed, the Terms mentioned Optum nine times. Whether Plaintiff "either chose not to read or take the time to understand [the Terms'] provisions is legally irrelevant." *Panameno v. Charter Commc'ns, LLC*, 2025 WL 3482621, at *3 (C.D. Cal. Dec. 1, 2025).

Plaintiff also appears to argue that there was no mutual assent to the Terms because Optum's Website's TOU do not contain an arbitration provision. Opp. 6. But Plaintiff does not claim to have consented to Optum's Website's TOU, nor is the TOU the agreement Optum moved to enforce. *See* Mot. 2–7. A set of terms to which Plaintiff does not claim to have consented to cannot undermine the bargain the parties actually struck.

It is undisputed that Plaintiff validly consented to the Terms on April 23, 2025. The Terms govern Plaintiff's use of the Online Services, such as Optum's Website, and include a binding arbitration agreement covering "any claims relating to . . . the Online Services." Terms 1, 5–6. The Court should therefore enforce this agreement.

## II. Plaintiff Agreed to Delegate Gateway Issues of Arbitrability to the Arbitrator.

When there is "clear and unmistakable evidence" that parties to an arbitration agreement agreed an arbitrator would decide issues of arbitrability, courts must respect that agreement. Mot. 14. Here, the parties agreed to delegate gateway questions of arbitrability to the arbitrator, including "the interpretation, formation, performance, or breach of the Terms, [and] whether a claim is subject to arbitration[.]" Terms 6. This language closely mirrors delegation language consistently found to be explicit and unambiguous. *See* Mot. 15 (collecting cases). Further, the arbitration agreement incorporates the AAA Rules, which provide the arbitrator with "the power to rule on his or her own jurisdiction." *Id*. at 15–16. As this Court noted, "the Ninth Circuit has held the 'incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability.'" *Rendon v. T-Mobile USA, Inc.*, 747 F. Supp. 3d 1314, 1319 (C.D. Cal. 2024) (Aenlle-Rocha, J.). Thus, Plaintiff's arguments concerning the scope of the arbitration provision are not for this Court to decide—they are for the arbitrator.

For example, Plaintiff's contention that Optum is not a third-party beneficiary of the arbitration agreement, Opp. 8–10, is precisely the type of gateway issue Plaintiff expressly agreed to delegate. *Sauer v. Experian Info. Sols., Inc.*, 2022 WL 2163016, at *2 (C.D. Cal. May 12, 2022) (determining third-party beneficiaries within the scope of the arbitration agreement is a threshold issue delegated to the arbitrator). Likewise, Plaintiff's retroactivity argument, Opp 10–13, is a classic arbitrability question that the parties delegated. *See Chien v. Bumble Inc.*, 641 F. Supp. 3d 913, 937 (S.D. Cal. 2022) (finding that issues related to the scope and enforceability of an agreement, including retroactivity, were delegated to the arbitrator).

Plaintiff does not actually dispute this point; rather, he argues that the delegation provision is unconscionable.[2] When considering an unconscionability challenge to a delegation provision, the court must consider only arguments "'specific to the delegation provision.'" *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208–10 (9th Cir. 2016) (citation omitted). Both procedural and substantive unconscionability must be present for a court to find a delegation provision unconscionable. *Id.* "[U]nconscionability requires a substantial degree of unfairness *beyond 'a simple old-fashioned bad bargain,'*" as it must be "so one-sided as to 'shock the conscience.'" *Id.* (citations omitted). "[T]he party opposing arbitration bears the burden of proving . . . unconscionability." *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012). Plaintiff falls well short of carrying that burden.

---

[2] Plaintiff's argument that application of Minnesota law for her claims would be contrary to California public policy is "premature." *Ratajesak v. New Prime, Inc.*, 2019 WL 1771659, at *6 (C.D. Cal. Mar. 20, 2019). As relevant here, both states apply the same federal "clear and unmistakable standard" when assessing delegation provisions in FAA-governed arbitration agreements, and thus "there is no conflict." *Id.* at *5; *Glacier Park Iron Ore Props., LLC, v. U.S. Steel Corp.*, 961 N.W.2d 766, 770 (Minn. 2021).

### A. The Delegation Provision Is Not Procedurally Unconscionable.

Plaintiff fails to show that the Terms' delegation provision is procedurally unconscionable. To determine whether a contract is procedurally unconscionable, courts first ask "whether the contract is one of adhesion." *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1089 (9th Cir. 2024). An arbitration agreement "is not adhesive if there is an opportunity to opt out of it." *Mohamed*, 848 F.3d at 1211. The Terms' arbitration agreement provided Plaintiff with the ability to opt out, which Plaintiff chose not to exercise, and is therefore is not adhesive. Mot. 6–7.

Next, courts must consider whether "circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required." *Ronderos*, 114 F.4th at 1090. Plaintiff argues that the Terms' unilateral modification provision and the placement of the delegation provision created such "oppression or surprise." Opp. 15–16. That is incorrect.

**Modification Provision**. "The mere presence of a 'unilateral modification clause does not make the arbitration provision itself unconscionable.'" *Patrick v. Running Warehouse, LLC*, 2022 WL 10584136, at *6 (C.D. Cal. Oct. 18, 2022), *aff'd*, 93 F.4th 468 (9th Cir. 2024) (quoting *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1033 (9th Cir. 2016)); *see also Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 864 (9th Cir. 2017) (same). This is particularly true where, as here, "Defendant has [not] exercised the modification clause" without first obtaining express consent. *See Patrick*, 2022 WL 10584136, at *6. Users, such as Plaintiff, are periodically prompted to re-consent to the Terms, including when there are material changes to the Terms. Mot. 2. Plaintiff cannot point to any undue surprise caused by Optum's enforcement of the very Terms to which he consented.

**Delegation Provision Placement.** The Terms' delegation provision is located conspicuously within the arbitration provisions. Terms 6. It is set apart in its own block of text and uses clear language that Plaintiff does not dispute is akin to language used in other agreements upheld by courts. *See* Mot. 15 (collecting cases).

In sharp contrast to *Pandolfi v. AviaGames, Inc.*, *see* Opp. 16, the delegation provision here is not presented in "small, light grey font" spanning "about three pages of single-spaced text," 2024 WL 4051754, at *10 (N.D. Cal. Sept. 4, 2024). *See Pandolfi v. AviaGames, Inc.*, No. 23-cv-05971-EMC (N.D. Cal.), Dkt. 73-1 (excerpt from Ex. 1 Declaration of Jianjing Qu).

> 15. Dispute Resolution and Binding Arbitration
>
> PLEASE READ THIS SECTION CAREFULLY BECAUSE IT REQUIRES YOU AND AVIAGAMES TO ARBITRATE CERTAIN DISPUTES AND CLAIMS AND LIMITS THE MANNER IN WHICH WE CAN SEEK RELIEF FROM EACH OTHER. ARBITRATION PRECLUDES YOU AND AVIAGAMES FROM SUING IN COURT OR HAVING A JURY TRIAL. YOU AND AVIAGAMES AGREE THAT ARBITRATION WILL BE SOLELY ON AN INDIVIDUAL BASIS AND NOT AS A CLASS ARBITRATION, CLASS ACTION, OR ANY OTHER KIND OF REPRESENTATIVE PROCEEDING. AVIAGAMES AND YOU ARE EACH WAIVING THE RIGHT TO TRIAL BY A JURY.
>
> FOLLOW THE INSTRUCTIONS BELOW IF YOU WISH TO OPT OUT OF THE REQUIREMENT OF ARBITRATION ON AN INDIVIDUAL BASIS. NO CLASS OR REPRESENTATIVE ACTIONS OR ARBITRATIONS ARE ALLOWED UNDER THIS ARBITRATION AGREEMENT.
>
> This Section 15 is an agreement between you and Aviagames and applies to both parties' respective agents, employees, subsidiaries, predecessors, successors, beneficiaries and assigns. These Terms affect interstate commerce, and the enforceability of this Section 15 will be substantively and procedurally governed by the Federal Arbitration Act, 9 U.S.C. § 1, et seq., to the extent permitted by law. This Section 15 shall be interpreted broadly and shall survive termination of these Terms.
>
> a) Claims Covered by Arbitration. All disputes, claims or controversies arising out of or relating to these Terms, any Services, or the relationship between you and Aviagames ("Disputes") shall be determined exclusively by binding arbitration. This includes claims that accrued before you entered into this Agreement. The only Disputes not covered by this section are (i) disputes regarding the infringement, protection or validity of your, Aviagames' or Aviagames' licensors' copyright, trademark or patent rights and (ii) individual disputes that qualify for small claims court.

And, unlike *Padolfi*, the arbitration agreement here includes bolded titles notifying the user of the "**Agreement to Arbitrate**," "**How to Opt Out of Agreement to Arbitrate**," "**Exceptions to Agreement to Arbitrate**," and the **"Arbitration Provisions**. Terms 5–6.

**B. The Delegation Provision is Not Substantively Unconscionable.**

Plaintiff has not demonstrated substantive unconscionability either. The two provisions he points to—(i) pre-arbitral informal resolution, and (ii) statute of limitations, Opp. 16–18—are routine and enforceable, not "so one-sided as to shock the conscience," *Mohamed*, 848 F.3d at 1210.

**Pre-Arbitral Dispute Resolution.** Plaintiff contends that the delegation provision is substantively unconscionable because the arbitration agreement requires

users "to try to resolve [any] dispute informally" prior to filing an arbitration. *See* Opp. 16. But courts have recognized that such internal grievance procedures are "both reasonable and laudable in an agreement containing a mutual obligation to arbitrate." *Nguyen v. Applied Med. Res. Corp.*, 4 Cal. App. 5th 232, 255 (2016); *see also Am. Chung Nam, LLC v. Mitsui O.S.K. Lines, Ltd.*, 2023 WL 8845213, at *4 (C.D. Cal. 2023) ("It is commonplace to require informal efforts to resolve a dispute before engaging in more costly formal efforts."). Such a "minimally burdensome process," which allows Optum an opportunity to "fix customer[] problems before resorting to slower and more expensive arbitration, is not substantively unconscionable." *Flores v. Coinbase*, 2023 WL 3564756, at *6 (C.D. Cal. 2023).

Plaintiff cites *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267 (2004), to argue that pre-arbitral dispute processes are unconscionable because they allow defendants a "free peek" at a Plaintiff's case. However, unlike this case, the plaintiff in *Nyulassy* was required to submit actual evidence of their claims as a part of a "[defendant]-controlled dispute resolution mechanism" prior to initiating an arbitration. *Id.* at 1282–83. Here, by contrast, the grievance process merely requires a user to "try to resolve the dispute informally" by contacting Optum via email, and if the dispute is not resolved within 30 days, either party can initiate an arbitration before the AAA. Terms 6. There is no obligation to provide Optum a "free peek" at anything, and "there is no reasonable basis to infer" that this agreement "requires anything other than some informal notice." *Serpa v. California Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 710 (2013).

**Statute of Limitations.** Next, Plaintiff argues that the statute of limitations provision is substantively unconscionable by requiring causes of action to be initiated within one year after the claim arose. Opp. 17–18. Contrary to Plaintiff's position, "California permits contracting parties to agree upon a shorter limitations period for bringing an action than that prescribed by statute, so long as the time allowed is reasonable." *Han v. Mobil Oil Corp.*, 73 F.3d 872, 877 (9th Cir. 1995).

"'Reasonable' in this context means the shortened period nevertheless provides sufficient time to effectively pursue a judicial remedy." *Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1430 (2003).

Here, the agreement provides users a full year after the claim accrues to bring an arbitration. Terms 7. Plaintiff does not cite any authority showing that one year is insufficient to pursue a judicial remedy. *See* Opp. 17–18. In fact, California courts have found that contractual statutes of limitations as short as three-months are enforceable. *See Moreno*, 106 Cal. App. 4th at 1431 (collecting cases). Plaintiff further argues that the one-year limitations period is insufficient because the alleged injury Plaintiff purportedly suffered "is self-concealing" and therefore may be difficult to discover. Opp. at 17–18. But "contractual statute of limitations . . . incorporat[e] California's discovery rule," *Tompkins*, 840 F.3d at 1033, so putting aside Defendant's disagreement with Plaintiff's argument, Plaintiff can raise this argument with the arbitrator as the Terms contemplate.

Because the Terms' delegation provision is not substantively unconscionable, this too, alone, defeats Plaintiff's unconscionability challenge. *See Apexxus LLC v. OptumRx, Inc.*, 2025 WL 3707249, at *12 (N.D. Cal. Dec. 22, 2025) (enforcing Optum's delegation provision because it was not substantively unconscionable).

## III. Even if the Court Were to Consider Plaintiff's Gateway Issues of Arbitrability, Each Should Be Resolved in Optum's Favor.

As shown above, Plaintiff's arguments about (i) whether Optum is a third-party beneficiary of the arbitration provision, Opp. 8–9; and (ii) the temporal scope of the arbitration provision, Opp. 10–13, were each delegated to the arbitrator to decide. *See supra* pp. 5–6. Even if the Court were to decide these issues, each should be resolved in Optum's favor.

### A. Optum Is, at Minimum, a Third-Party Beneficiary to the Arbitration Agreement.

As a UHG Affiliate, Optum is a direct party to the Terms and the arbitration

agreement, *see supra* pp. 2–3. Even assuming, *arguendo*, Optum is not a direct party, it is clearly a third-party beneficiary to the Terms' arbitration agreement.

A non-signatory is a third-party beneficiary to a contract when it is "made expressly for [its] benefit," which is evident where the relevant circumstances show that (1) "the third party would in fact benefit from the contract;" (2) "a motivating purpose of the contracting parties was to provide a benefit to the third party;" and (3) permitting the third party to enforce the contract "is consistent with the objectives of the contract and the reasonable expectations of the contracting parties." *Ngo v. BMW of N. Am., LLC*, 23 F.4th 942, 946 (9th Cir. 2022).

Here, the Terms govern Plaintiff's use of UHG's Affiliates' websites, which includes Optum's Website. Terms 1. Likewise, the arbitration agreement covers "any claims relating to . . . the Online Services," *id.* at 5, and "any claims asserted . . . against any present or future parent or affiliated company . . . arising out of your use of the Online Services," *id.* at 6. Additionally, the "Informal Resolution" provision provides a common email address for users such as Plaintiff to contact "if the[ir] dispute is with . . . ***Optum***." *Id.* (emphasis added). Each of these facts strongly indicate the Terms and its arbitration agreement were intended to benefit Affiliates' like Optum, do in fact benefit Optum, and Optum's enforcement of the agreement "is consistent with the objectives of the contract and the reasonable expectations of the contracting parties." *Ngo*, 23 F.4th at 946.[3]

**B. The Terms' Arbitration Agreement Applies Retroactively.**

The Terms' arbitration agreement covering "any claim relating to [the] Terms, or the Online Services," is retroactive and covers Plaintiff's conduct occurring prior to his consent in April 2025.

[3] Unlike Optum, Apple and Google are not direct parties to the Terms, nor are the Terms drafted with such clear evidence that the agreement is made for their benefit; thus, it is unsurprising that Apple and Google use more explicit language to describe their third-party beneficiary status. Terms 11–12.

Arbitration agreements that arise out of or relate to "any dispute, controversy or claim" are "broad and far reaching" in scope, *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 2074 F.3d 1126, 1131 (9th Cir. 2000), and "must be interpreted liberally," *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720 (9th Cir. 1999). "Where an arbitration provision does not contain a temporal limitation, the parties may be compelled to arbitrate despite the fact that the challenged conduct predates the signing of the agreement." *Jones v. Deja vu, Inc.*, 419 F. Supp. 2d 1146, 1150 (N.D. Cal. 2005).

For example, in *Wallens v. Milliman Fin. Risk Mgmt. LLC*, the court found that an agreement covering "[a]ny controversy, dispute or claim" was binding on claims that existed *before* the plaintiff signed the agreement. 509 F. Supp. 3d 1204, 1213 (C.D. Cal 2020) (emphasis added). Similarly, here, Plaintiff agreed to arbitrate "*any claims* relating to these Terms, or the Online Services." Terms 6 (emphasis added). This type of arbitration agreement covering "any claims" is broad and applies retroactively. *See Mohammed v. T-Mobile USA, Inc.*, 2018 WL 6249910, at *7 (E.D. Cal. Nov. 29, 2018) (applying arbitration agreement covering "any and all claims or disputes" retroactively).

The cases Plaintiff cites are readily distinguishable. *Heckman v. Live Nation Entertainment, Inc.*, Opp. 10–11, does not establish any rule about when an arbitration agreement may be applied retroactively; instead, the decision focuses on whether a contract of adhesion was unconscionable. 120 F.4th 670, 681 (9th Cir. 2024). And the unconscionability concerns in *Heckman* arose from the potential retroactive application of revised arbitration terms without sufficient notice, *id.* at 682–83. That issue is absent here because Plaintiff expressly assented to the Terms in April 2025.

Next, Plaintiff cites *Castro v. ABM Industries, Inc.*, 2018 WL 2197527, at *3 (N.D. Cal. May 14, 2018). Opp. 10. *Castro* found that an arbitration agreement covering "all Covered Claims, *whenever they arise*" applied prospectively because "[t]he use of the present participle 'arising'" makes it clear that it applies to claims

that may arise going forward." 2018 WL 2197527, at *4. But *Castro* distinguished the use of the word "arising" when describing "the substance of the covered claims"—which does not implicate a prospective limitation—versus its use in the context of the "timing . . . of the claim." *Id*. Here, unlike in *Castro*, the Terms use the phrase "arising out of" only in the context of describing the *substance* of the covered claims, not the *timing* of the claim: "[The] arbitration provisions . . . apply to any claims . . . arising out of your use of the Online Services." Terms 6.

The final out-of-circuit case Plaintiff cites, *Offley v. Fashion Nova*, 671 F. Supp. 3d 60 (D. Mass. 2023), does not help him either. The arbitration agreement at issue in *Offley* was limited by the phrase "otherwise related to this Agreement," which the court interpreted as restricting the arbitration provision to the purchase agreement being entered and not to prior purchases. *Id.* at 67. In contrast, the Terms here cover "any claims relating to . . . the Online Services." Terms 5. This expansive language is not limited to any specific transaction or interaction with the Website. As a result, when "read most naturally," the arbitration provision is "not limited by the time frame of the agreement[]." *Kristian v. Comcast Corp.*, 446 F.3d 25, 33 (1st Cir. 2006). If any ambiguity remains, the arbitration agreement must be broadly construed and resolved in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983). The Court should therefore interpret Terms' arbitration agreement to apply retroactively.

## **CONCLUSION**

For these reasons, this Court should order Plaintiff's claims to individual arbitration and stay this litigation pending those proceedings.

///

///

///

///

///

Dated: April 22, 2026

**HOGAN LOVELLS US LLP**

By: /s/ *Vassi Iliadis*

Vassi Iliadis (SBN 296382)
James W. Ettinger (SBN 344292)
HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
vassi.iliadis@hoganlovells.com
jay.ettinger@hoganlovells.com

Adam Cooke (admitted *pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, D.C. 20004
Telephone: (202) 637-5600
adam.a.cooke@hoganlovells.com

*Attorneys for Defendant Optum, Inc.*

# **CERTIFICATION OF COMPLIANCE**

The undersigned, counsel of record for Defendant Optum, Inc., certifies that this brief contains 4,123 words, which complies with the word limit of L.R. 11-6.1 and Judge Aenlle-Rocha's Standing Order.

**HOGAN LOVELLS US LLP**

By: /s/ *Vassi Iliadis*

Vassi Iliadis (SBN 296382)